UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL TROY FOREMAN,                    :
                                         :
            Plaintiff,                   :      CIVIL NO. 3:CV-07-0066
                                         :
      v.                                 :      (Judge Caputo)
                                         :
Warden CRAIG A. LOWE, *et al.*,          :
                                         :
            Defendants.                  :

## <u>MEMORANDUM</u>

Plaintiff Michael Troy Foreman initiated this *pro se* action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983.  At the time of filing, Plaintiff, who is a Jamaican National, was detained in the S.N.U. at the Pike County Correctional Facility ("PCCF"), Lords Valley, Pennsylvania, pending his removal from the United States.  Plaintiff subsequently was deported to Jamaica.  (*See* Doc. 20.)  Plaintiff alleges that, for a period of ten days in November and December 2006, his cell was inadequately heated, thus subjecting him to freezing temperatures.  He claims that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by ignoring his requests to repair the heating unit or to provide him with extra blankets.

Presently pending before the Court are cross-Motions for Summary Judgment.  For the reasons set forth below, Defendants' Motion will be granted, and Plaintiff's Motion will be denied.

**BACKGROUND**

**I.    Statement of Facts**

On December 6, 2006, Foreman filed an informal grievance form complaining that he had been freezing in his cell for the past ten days or more.  (Doc. 27 at 11, copy of PCCF Inmate Grievance Form filed on 12/6/06.)  Foreman claimed that he had been informing correctional officers that his cell was ice cold, but nothing had been done about the situation except for maintenance staff reporting to the unit twice that day and "playing with the thermostat."  (*Id.*)

Also on December 6, 2006, Corrections Officer Benko filed a maintenance work order stating that inmates in the S.N.U. had been complaining that they are cold and that the windows are drafty.  (*Id.* at 14, Maintenance/Services Work Order.)  The maintenance staff reported to the S.N.U. that day and recorded an internal temperature there of 68 degrees Fahrenheit.  (*Id.* at 15.)  They noted that the outside temperature was 21 degrees Fahrenheit.  (*Id.*)  On December 7, the maintenance staff checked the windows on the outside of the facility and determined that they were in good shape and nothing was in need of repair or caulking.  (Doc. 27 ¶ 4, Affidavit of Warden Craig A. Lowe.)  On December 8, the maintenance staff returned to the S.N.U., reset the thermostat to 72 degrees Fahrenheit, and recorded a temperature of 68 degrees Fahrenheit in the S.N.U. cells and exterior cells. (*Id.* at 16.)  They noted that the outside temperature on December 8 was 13 degrees Fahrenheit.  (*Id.*)

2

On December 11, 2006, the temperature of the airflow coming out of the vent in Foreman's cell was recorded to be 80 degrees Fahrenheit.  (Doc. 27 at 12, Shift Commander Informal Grievance Resolution Form.)  The temperature in Foreman's cell was recorded at 73 degrees Fahrenheit.  (*Id.*)  Foreman indicated on the bottom of the Shift Commander's Information Grievance Resolution Form that he was satisfied with the response and did not wish to pursue the issue further.  (*Id.*)

However, later that day, Foreman filed a new grievance again complaining that it is "continuously cold" in the S.N.U. cells and that no heat was coming out of his vent.  (*Id.* at 18, copy of PCCF Inmate Grievance Form filed 12/11/06.)  Foreman alleged that he made a mistake in checking the box on his previous grievance form indicating that he was satisfied with the response, but Sergeant Langbein refused to allow him to correct the mistake after the form had been submitted.  (*Id.*)  In his new grievance, Foreman also alleged that, as a result of the conditions in his cell, he had contracted a cold for which he had been examined by medical staff.  (*Id.*)  In their response to his grievance, PCCF staff indicated that maintenance staff had examined Foreman's cell and determined that the temperature was within "acceptable parameters."  (*Id.*)  PCCF staff further noted that Foreman had been advised that he should feel free to submit requests for medical attention.  (*Id.*)

Foreman appealed to the Grievance Committee.  In their January 2, 2007 response, the Committee agreed with the shift commander's response based on the fact that "the unit was checked by the maintenance department and was determined to be within normal limits."  (*Id.* at 19, P.C.C.F. Level II and III Appeals Form.)  Foreman's final appeal to the

3

Warden also was denied on January 4, 2007.  (*Id.* at 20.)  In his response, Warden Lowe noted that the temperature inside Foreman's cell on December 6 was 68 degrees Fahrenheit, and on December 8 was 70 degrees Fahrenheit.  (*Id.*)

The PCCF follows the American Correctional Association's Performance-Based Standards for Adult Local Detention Facilities ("ACA Standards").  (Doc. 27 ¶ 2.)  The ACA Standards include 4-ALDF-1A-20, which states that, "Temperature and humidity are mechanically raised or lowered to acceptable comfort levels."  (*See id.* at 5.)  The Department of Immigration and Naturalization Services ("INS"), under whose authority Foreman was detained, also follows the ACA standards.  (*See id.* at 9.)

## II.    Procedural History

Plaintiff filed his Complaint on January 12, 2007 (Doc. 1).  By Order dated February 6, 2007, his Complaint was dismissed for failure to comply with the Federal Rules of Civil Procedure.  (Doc. 8.)  Although Plaintiff filed a Second Amended Complaint on February 12, 2007 (Doc. 10), he immediately filed a motion to amend his complaint (Doc. 11).  By Order dated February 20, 2007, the Court granted Plaintiff leave to file a Third Amended Complaint (Doc. 12).

Service of Plaintiff's Third Amended Complaint (Doc. 13) was directed on March 2, 2007.  (Doc. 14.)  In addition to the Warden of PCCF, Craig A. Lowe, Plaintiff names the following PCCF employees as Defendants: A.W. Romance; A.W. McLaughlin; Lieutenant Kumburis; Lieutenant Campos; Sergeant Frawley; Sergeant DeMarco; and Officer Delaplace.  (Doc. 13 at 2.)  Defendants filed an Answer on April 9, 2007.  (Doc. 15.)

On September 19, 2007, Defendants filed a Motion for Summary Judgment (Doc. 25), supporting brief (Doc. 26), and Affidavit (Doc. 27).  Plaintiff failed to file his opposition to Defendants' Motion.  By Order dated November 8, 2007, the Court directed Plaintiff to file his opposition within fifteen days.  (Doc. 30.)  Plaintiff was forewarned that his failure to file his opposition would result in the Motion being deemed unopposed and addressed on the merits.  Because Plaintiff has failed to oppose Defendants' Motion in accordance with M.D. Pa. L.R. 7.6 and 56.1, the Court will deem the Motion unopposed and will review it on the merits.

On November 6, 2007, Plaintiff filed a Motion for Summary Judgment (Doc. 28) and supporting brief (Doc. 29).  Defendants filed their brief in opposition (Doc. 31) on December 6, 2007.  Thus, Plaintiff's Motion is ripe for review.

## LEGAL STANDARD

Summary judgment will be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  *Id.* at 249.  In considering a summary judgment motion, inferences from the underlying facts

must be viewed in the light most favorable to the non-moving party.  *P.N. v. Clementon Bd. Of Educ.,* 442 F.3d 848, 852 (3d Cir. 2006).

The moving party has the burden of showing the absence of a genuine issue of material fact, but the nonmoving party must present affirmative evidence from which a jury might return a verdict in the nonmoving party's favor.  *Anderson*, 477 U.S. at 256-57.  The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  Accordingly, the non-moving party "may not rest upon the mere allegations or denials of the . . . pleading," but "must set forth specific facts showing that there is a genuine issue for trial."  *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (citations omitted).  Unsubstantiated arguments made in briefs are not considered evidence of asserted facts.  *Versarge v. Township of Clinton*, 984 F.2d 1359, 1370 (3d Cir. 1993).  Allegations made without any evidentiary support may be disregarded.  *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000).

In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.  Summary judgment must be entered in favor of the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  If the evidence in favor of the nonmoving party is "merely colorable or not significantly probative," summary judgment should be granted.

6

*Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994) (abrogated on other grounds)).

## DISCUSSION

To state a viable § 1983 claim, Plaintiff must establish (1) that the alleged wrongful conduct was committed by a person acting under color of state law, and (2) that the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). Although it is undisputed that Defendants are acting under color of state law, Plaintiff fails to establish the deprivation of a right, privilege, or immunity secured by the Constitution or laws of the United States.

The Constitutional issue implicated in this case is the Eighth Amendment requirement that prison officials make reasonable efforts to assure prisoner health and safety. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). While "[t]he Constitution 'does not mandate comfortable prisons,' . . . neither does it permit inhumane ones . . . ." *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). To establish an Eighth Amendment claim, Foreman must meet two requirements. First, he must demonstrate that the conditions of his confinement pose "a substantial risk of serious harm" to his health or safety. *Id.* at 834. Secondly, Foreman must show that the person or persons responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). As described by the Supreme Court in *Farmer*, the standard for determining deliberate indifference in a conditions of confinement case is whether a prison

7

official knew of and disregarded an excessive risk to an inmate's health or safety.  *Farmer*, 511 U.S. at 837.  The Court added that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  *Id.* at 842.

The Third Circuit Court of Appeals has raised doubts that having a cold cell is really "an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life,'" triggering Eighth Amendment scrutiny.  *Burkholder v. Newton*, 116 Fed. Appx. 358, 363 (3d Cir. 2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  In the instant case, it is not even clear that Plaintiff suffered a deprivation of heat.  Defendants have submitted evidence demonstrating that the temperature in the S.N.U., in the cells within that unit, and in Foreman's own cell were recorded at least three times between December 6 and 11, 2006.  (*See* Doc. 27 at 12, 15, 16.)  The temperatures recorded by the maintenance staff ranged from 68 degrees to 73 degrees Fahrenheit.  (*See id.*)  Plaintiff claims that he was exposed to freezing temperatures for at least ten days, but he has failed to offer any opposition to Defendants' evidence.  *See Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) ("the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact," and "cannot rest solely on assertions made in the pleadings, legal memoranda or oral argument."  (internal citations omitted).

With respect to Plaintiff's Motion for Summary Judgment (Doc. 28), he has failed to establish that he is entitled to judgment as a matter of law.  The sole piece of evidence Plaintiff offered in support of his Motion is the affidavit of another inmate, Michael Reiss.  (Doc. 29 at 15-16.)  In his Affidavit, Reiss states that, on February 7, 2007, he was temporarily moved from another unit at PCCF to the S.N.U. and spent the night there.  (*Id.*

at 15.)  He states that he awoke at 4:00 a.m. on February 8, 2007 for a court appearance, and "noticed that it was freezing cold in [his] cell."  (*Id.*)  Reiss states that he believed the temperature in his cell was "45 degrees [Fahrenheit] or lower" and that the temperature in the common area was warmer than the cells by "at least 30 degrees or more."  (*Id.* at 15-16.)  However, the time period during which Plaintiff claims that he received inadequate heat in his cell was in late November and early December 2006.  Therefore, Reiss's Affidavit fails to create a genuine issue of material fact because his statement regarding his cell temperature in the S.N.U. on February 8, 2007 is irrelevant to the instant action.

In addition, Foreman did not demonstrate that he suffered serious medical injuries as a result of his alleged exposure to cold.  He alleged that he developed a cold and "flu-like symptoms" that persisted for weeks.  (Doc. 13 at 3.)  A "serious medical need" is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention.  *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987); *McCabe v. Prison Health Services*, 117 F. Supp. 2d 443, 450 (E.D. Pa. 1997).  Although Plaintiff sought medical treatment for his flu-like symptoms, his physical injuries do not implicate Constitutional protection.  Courts have held that ailments such as colds and sore throats are insufficient to rise to a level of constitutional protection.  *See Benson v. Godinez*, 919 F. Supp. 285 (N.D. Ill. 1996) (Plaintiff denied relief because he only suffered from colds and a sore throat).  Further, Plaintiff attached a medical request to his Complaint showing that the doctor prescribed an antibiotic for him on January 12, 2007.  (*See* Doc. 13 at 11.)

He did not attach any further medical requests, which suggests that the antibiotic resolved his medical problem.

Moreover, even assuming that Foreman was exposed to extreme cold in his cell at PCCF, he has failed to demonstrate that Defendants were deliberately indifferent. Although he claims that he was freezing for approximately ten to sixteen days and that, during that time, he informed various corrections officers, including Defendants Romance, McLaughlin, Kumburis, Campos, Frawley, DeMarco, and Delaplace, that the heating system was broken and he wanted a third blanket until it was fixed, he did not file a grievance until December 6, 2006.  (Doc. 27 ¶ 3.)  Moreover, Plaintiff admits that maintenance staff were dispatched to the S.N.U. on December 6, which was the same day that he filed his first grievance.  (Doc. 13 at 5 ¶ 12.)  Plaintiff also admits that maintenance staff returned to the S.N.U. on December 8, 2006.  (Doc. 13 at 6 ¶ 17.)

Ultimately, the record supports a conclusion that Defendants responded to Plaintiff's complaints of cold temperatures in a prompt fashion and that they took reasonable measures to correct the problem.  Thus, Plaintiff has failed to establish an Eighth Amendment violation, and summary judgment will be granted in Defendants' favor.

An appropriate Order follows.

May 13, 2008                              s/ A. Richard Caputo
                                          A. RICHARD CAPUTO
                                          United States District Judge

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL TROY FOREMAN, | : | |
| | : | |
| Plaintiff, | : | CIVIL NO. 3:CV-07-0066 |
| | : | |
| v. | : | (Judge Caputo) |
| | : | |
| Warden CRAIG A. LOWE, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## ORDER

**AND NOW, this 13th day of May, 2008,** for the reasons set forth in the foregoing

Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

   1.   Defendants' Motion for Summary Judgment (Doc. 25) is **GRANTED**.

   2.   Plaintiff's Motion for Summary Judgment (Doc. 28) is **DENIED**.

   3.   The Clerk of Court shall **ENTER** judgment in favor of the Defendants and against

the Plaintiff.

   4.   The Clerk of Court is directed to mark this case **CLOSED**.



s/ A. Richard Caputo
A. RICHARD CAPUTO
United States District Judge